## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JOSEPH E. BENNETT,

               Petitioner,

                                       CASE NO. 2:07-CV-293

     v.                                   JUDGE MARBLEY

                                         MAGISTRATE JUDGE KING

CLIFFORD SMITH, Warden,

               Respondent.


## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition. as amended, respondent's return of writ and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.


### FACTS and PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On February 25, 2005, the Delaware County Grand Jury indicted appellant on one count of engaging in a pattern of corrupt activity, a first degree felony; two counts of theft, third degree felonies; two counts of theft, fifth degree felonies; six counts of breaking and entering, fifth degree felonies; six counts of vandalism, fifth degree felonies; and three counts of possessing criminal tools, fifth degree felonies.
>
> On July 5, 2005, appellant filed a motion to suppress. On

August 17, 2005, the trial court conducted a suppression hearing. The testimony presented established:

In July and August 2004, small businesses in Delaware County were the target of vandalism, theft, and breaking and entering. Two incidents involving Norton's Sporting Goods resulted in the theft of firearms. A witness to a break in at Norton's Sporting Goods on July 26, 2004, described a gray or a maroon Dodge Stratus, with a left rear taillight out, leaving the scene.

 On July 27, 2004, Sergeant Leatherman of the Delaware City Police Department met with individuals he knew to be reliable. They informed him appellant and his co-defendant were involved in the rash of break-ins. They described the car with the left tail light out. The same morning, Officer Boland of the Delaware City Police Department observed the vehicle traveling within the city limits and instructed the driver to pull over. The vehicle was missing the left taillight. Appellant was a passenger in the vehicle which was being driven by his co-defendant, Henry Wolfe. Officer Boland conducted an inventory search of the vehicle and discovered eighty-one rounds of .22 caliber ammunition and a 9mm round in the car's console-matching items stolen from Norton's Sporting Goods. A pry bar, a wrench and a laundry bag, matching a witness' description, were also found in the vehicle. Evidence from the scene demonstrated the doors at the store had been pried open. Officer Boland impounded the vehicle and appellant was taken to the police station for questioning, after which he was released.

Detective Wollum of the Delaware County Sheriff's office interviewed appellant, after a BB gun was discovered during a search of appellant's residence. A BB gun had been stolen from Norton's the previous morning. Detective Wollum observed appellant's shoes outside of his cell with glass embedded in the soles. He seized the shoes to be tested for comparison of glass fragments found at the scene.

On August 11, 2004 at 4:00 a.m., Deputy Bobb of the Delaware County Sheriff's Department checked a gun store for any break in. He parked his cruiser at the back of the gun store parking

2

lot when a vehicle pulled into the lot from the South. The vehicle's headlights swept over the cruiser and then pulled out of the lot, continuing at a high rate of speed. Deputy Bobb followed the vehicle, "looking for a reason to stop the car to find out why it pulled into a closed business at 4:00 a.m."

After a few minutes, Deputy Bobb observed the vehicle cross the double centerline and "the driver side tires touched the left line of the double line." He described the car as "drifting left and weaving at times and the tires would go over both yellow lines and to the edge of the road." The tires went completely over the left line 4-5 times over 1-2 miles. The deputy then initiated a stop. Appellant was the driver of the vehicle, and Wolfe, his co-defendant, was a passenger. Appellant did not possess a valid operator's license. Deputy Bobb conducted an inventory search at the scene, and discovered a large crowbar, vice grips, pliers and a brown bag. Deputy Bobb testified at the suppression hearing he was unsure of any written policy for impounding vehicles and performing inventory searches, but he knew the department had a standard operating procedure.

Via Judgment Entry, the trial court overruled appellant's motion to suppress.

The matter proceeded to a jury trial on August 23, 2005. During the trial, the State moved to amend count three of the indictment to change the name of the victim from Midway Market to Norton's Sporting Goods. Despite appellant's objection, the trial court granted the motion to amend. After the presentation of the evidence, appellant was found guilty of one count of engaging in a pattern of corrupt activity, three counts of theft, five counts of breaking and entering, five counts of vandalism and three counts of possessing criminal tools.

*State v. Bennett*, 2006 WL 3020292 (Ohio App. 5th Dist., October 18, 2006).  On October 3,

2005, the trial court sentenced petitioner to an aggregate term of five years.  *Exhibit 4 to*

*Motion to Dismiss, Doc. No. 10*.  Represented by the same counsel, petitioner filed a timely

appeal. He asserted the following claims:

> I. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, THEREBY VIOLATING THE DEFENDANT'S RIGHTS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS.

> II. THE TRIAL COURT ERRED BY PERMITTING THE PROSECUTION TO AMEND COUNT THREE OF THE INDICTMENT, THEREBY VIOLATING THE DEFENDANT'S RIGHTS GUARANTEED BY THE OHIO CONSTITUTION .

*See id.; Exhibit 6 to Motion to Dismiss.* On September 27, 2006, petitioner filed a *pro se* motion for leave to file a supplemental brief raising challenges to his sentence based on *Blakely v. Washington,* 542 U.S. 296 (2004), and *State v. Foster*, 109 Ohio St.3d 1 (2006). *Exhibit 8 to Motion to Dismiss.* The appellate court never issued a ruling on petitioner's motion; however, on October 18, 2006, the appellate court affirmed the judgment of the trial court. *State v. Bennett, supra.* Thereafter, on November 2, 2006, petitioner filed a *pro se* supplemental appellate brief asserting as follows:

> 1. Defendant-appellant constitutional rights were violated because the sentencing statutes under which the defendant.... was sentenced to a non-minimum sentence and consecutive prison term were unconstitutional.

> 2. Trial counsel's performance of his duties was deficient at the time of sentencing, in that he failed to function as the counsel guaranteed by the Sixth Amendment and defendant-appellant was prejudiced by counsel's performance.

*Exhibit 10 to Motion to Dismiss.* On November 13, 2006, petitioner filed a motion for

reconsideration, which motion the appellate court denied.  *Exhibits 11 and 12 to Motion to Dismiss*.  Petitioner filed a timely appeal.  He raised the following propositions of law:

> 1.  Defendant-appellant Mr. Bennett's constitutional rights were violated because the sentencing statutes under which the defendant-appellant was sentence[d] to a non-minimum sentence and consecutive prison term were unconstitutional.

> 2.  Trial counsel's performance of his duties at the time of sentencing, in that he failed to function as counsel guaranteed by the Sixth Amendment and defendant-appellant was prejudiced by counsel's performance.

*Exhibits 13 and 14 to Motion to Dismiss*.  On March 14, 2007, the Ohio Supreme Court dismissed petitioner's appeal as not involving any substantial constitutional question.  *State v. Bennett*, 113 Ohio St.3d 1415 (2007); *Exhibit 16 to Motion to Dismiss*.

On April 30, 2007, petitioner filed a *pro se* application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  He asserted the ineffective assistance of appellate counsel for failing to raise on appeal a claim that his sentence violated *Blakely v. Washington*, 542 U.S. 296, and for failing to preserve the issue in the Ohio Supreme Court.  *Exhibit 21 to Motion to Dismiss.*  On August 20, 2007, the appellate court denied petitioner's Rule 26(B) application as untimely.  *Exhibit 22 to Motion to Dismiss*.  Petitioner apparently never sought an  appeal of the appellate court's decision to the Ohio Supreme Court.

On April 6, 2007, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1.  The petitioner's right to due process of law... was violated when he was sentenced under an unconstitutional statute.

2.  The petitioner was denied due process of law wherein the State of Ohio was allowed to amend the indictment after trial began.

3.  Ineffective assistance of counsel in violation of the United States Constitution's Sixth Amendment.

4.  The petitioner's conviction is against the weight of the evidence which is a due process of law violation.

5.  The prosecutor should have withdrawn himself from the case based upon a conflict of interest because defense counsel and the prosecutor were former law partners at the same law firm.

It is the position of the respondent that all of petitioner's claims are procedurally defaulted.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.

6

*Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id*.  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id*.  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Id.*  Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *Id*.  This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In claim one, petitioner asserts that his sentence violated *Blakely v. Washington*, 542

U.S. 296.  This claim is readily apparent from the face of the record, and should have been raised on direct appeal, but was not.  However, petitioner attempted to raise his *Blakely* claim in a September 27, 2006, motion for leave to file a supplemental brief and November 2, 2006, supplemental brief.  *See Exhibits 8 and 10 to Motion to Dismiss.*  As noted *supra*, the appellate court nonetheless failed to address petitioner's *Blakely* claim.  See *State v. Bennett, supra.*  The state court of appeals denied petitioner's motion for reconsideration as follows:

> This matter came on for consideration upon defendant-appellant Joseph E. Bennett, Jr.'s motion for application for reconsideration filed August 15, 2006.  Specifically, appellant's motion argues he filed a motion for leave to file a supplemental brief and assignments of error on September 27, 2006, and [] filed a supplemental brief and assignments of error on November 2, 2006.  Appellant requests this court reconsider its October 18, 2006 Judgment Entry terminating his appeal.
>
> Upon review of the record, appellant filed the notice of appeal herein on November 2, 2005.  Appellant's merit brief was filed on February 21, 2006, and appellee's brief on April 5, 2006.  This Court heard oral argument in this matter on August 15, 2006, and rendered its decision on October 18, 2006.
>
> With regard to motions for reconsideration, the test generally applied is whether the motion calls the Court's attention to an obvious error in the decision or raises an issue for consideration, which was not considered or not fully considered by the Court....
>
> Upon review of the motion for reconsideration, the same does not call this Court's attention to an obvious error in rendering the decision, nor does it raise an issue which was not fully considered by this Court.  Accordingly, appellant's motion for reconsideration of this Court's October 18, 2006 Judgment Entry is denied.

8

*Exhibit 12 to Motion to Dismiss*.  The state appellate court did not expressly indicate why it failed to consider the petitioner's motion for leave to file a supplemental brief or his challenge under *Blakely* as presented in that motion.  Petitioner thereafter raised his *Blakely* claim in his appeal to the Ohio Supreme Court.  *See Exhibit 14 to Return of Writ*.  Under these circumstances, it cannot be said that petitioner waived his right to present his *Blakely* claim in federal habeas corpus under *Maupin*.

Respondent contends that petitioner's *Blakely* claim is procedurally defaulted because petitioner had no right under the United States Constitution to hybrid representation and therefore no right to file a *pro se* supplemental brief.  *Motion to Dismiss*, at 15.  However, the state appellate court did not reject petitioner's motion for leave to file a supplemental brief, his supplemental brief, or his motion for reconsideration on this basis.  Therefore, the state courts did not enforce the rule referred to by respondent.  The second part of *Maupin* has therefore not been satisfied.

Further, this Court questions whether any state rule prohibiting *pro se* supplemental briefs on the basis that a criminal defendant has no right to hybrid representation is an either adequate or independent basis for precluding federal habeas corpus review under the third part of *Maupin*.  To be independent, a state procedural rule and the state courts' reliance on it "must rely in no part on federal law." *Fautenberry v. Mitchell,* 2001 WL 1763438, at *24 (S.D.Ohio 2001) (citing *Coleman,* 501 U.S. at 732-733).  Here, the rule referred to by respondent appears to be closely intertwined with federal law.  *See State v. Thompson*,

9

33 Ohio St.3d 1, 6-7 (1987), citing *McKaskle v. Wiggins*, 465 U.S. 168 (1984). To be adequate, a state procedural rule must be "firmly established and regularly followed" by the state courts at the time it was applied. *Monzo v. Edwards,* 281 F.3d 568, 578 (6th Cir.2002). Respondent has referred to no state court decisions in support of his argument that the state courts regularly enforce a rule prohibiting *pro se* supplemental pleadings on appeal. Indeed, this Court's research suggests that there is no regular and consistent enforcement of any such rule. *See e.g., State v. Beaver*, 119 Ohio App.3d 385, 401-402 (Ohio App. 11th Dist. April 28, 1997); *State v. White*, 71 Ohio App.3d 550, 551 n.1 (Ohio App. 4th Dist. March 26, 1991); *State v. Perotti*, 1991 WL 87303 (Ohio App. May 15, 1991); *State v. Harris*, 2000 WL 731374 n.1 (Ohio App. 6th Dist. June 9, 2000). In short, the Magistrate Judge concludes that petitioner reasonably fairly and promptly presented claim one to the state courts. The fact that the state appellate court refused to consider his *pro se* supplemental pleading is immaterial. This Court therefore concludes that petitioner's claim one is properly before this Court for merits consideration. However, for the reasons stated *infra*, the Court nonetheless concludes that claim one is without merit.

In claim two, petitioner asserts that he was denied due process when the State amended the indictment after trial had started. Petitioner properly raised this claim on direct appeal; however, he failed to raise the claim on appeal to the Ohio Supreme Court. He may now no longer do so under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

In claim three, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to raise a *Blakely* issue on appeal.  Petitioner presented this claim in a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B); however, the state appellate court denied petitioner's application as untimely. *Exhibit 22 to Motion to Dismiss.*  Further, petitioner thereafter failed to file an appeal of the appellate court's decision to the Ohio Supreme Court.  He may now no longer do so, as Ohio does not permit delayed appeals in post conviction proceedings.  Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(c).

In claim five, petitioner asserts that he was denied a fair trial due to a conflict of interest because the prosecutor and defense counsel were former partners in the same law firm.  It does not appear from the record that this claim has ever been presented to the state courts.  Because the claim relies on matters not readily apparent from the face of the record, this claim would properly be raised in a petition for post conviction relief pursuant to O.R.C. §2953.21; however, the time period for filing such action has long since expired, and any attempt by petitioner now to pursue such action must meet the requirements for a delayed post conviction petition under O.R.C. §2953.23.  That statute provides:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:
>
> (1) Both of the following apply:

11

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an inmate for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

12

The record does not indicate that petitioner can meet these requirements here.  This Court therefore deems the first and second parts of the *Maupin* test to have been met as to claim five.

This Court must decide whether the procedural rules at issue constitute adequate and independent bases upon which to foreclose review of petitioner's federal constitutional claims.  This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims.  *See Maupin v. Smith*, 785 F.2d at 138.  Under this analysis, the procedural rules barring claims two, three and five constitute adequate and independent state grounds for denying relief.  The state courts must be given a full and fair opportunity to remedy alleged constitutional defects.  The requirement that all available claims be presented at the first opportunity and the time limitations for filing appeals and post conviction proceedings serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine.  *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra*.

Petitioner has waived his right to present claims two, three, and five for federal habeas review.  He can still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violation that he alleges.

> "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003)(emphasis in original).  Petitioner has failed to establish cause and prejudice for *his procedural defaults.*

*Beyond the four-part* Maupin analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. at 491; see also *Sawyer v. Whitley*, 505 U.S. 333.  After review of the record, the Court does not deem this to be such a case.


## CLAIM ONE

In claim one, petitioner asserts that his sentence violates *Blakely* because the trial court imposed non-minimum, consecutive sentences based upon judicial fact-finding neither admitted by him nor found by the jury beyond a reasonable doubt.  Because the state courts did not address this claim, this Court conducts a *de novo review. See Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005), citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003).

In *Blakely,* the United States Supreme Court applied the rule of *Apprendi v. New*

*Jersey*, 530 U.S. 466, 490 (2000)("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), and held that:

> [T]he "statutory maximum"... is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*... In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," *Bishop, supra*, § 87, at 55, and the judge exceeds his proper authority.

*Blakely v. Washington, supra,* 542 U.S. at 303-304 (emphasis in original)(citations omitted). In *State v. Foster,* 109 Ohio St.3d 1, 19-22 (2006), the Ohio Supreme Court subsequently concluded that imposition of consecutive, non-minimum sentences under O.R.C. §2929.14(E) violated *Blakely*. In fashioning a remedy for this constitutional violation, the Ohio Supreme Court excised the unconstitutional provisions of Ohio's sentencing statutes in accordance with the Supreme Court's remedial action in *United States v. Booker*, 543 U.S. 234, 764 (2005)(severing and excising unconstitutional provisions of United States Sentencing Guidelines rather than invalidating sentencing guidelines in their entirety), and remanded all cases pending on direct appeal for re-sentencing. *Id.*, at 29-31.

The record in this case indicates that petitioner was originally sentenced to the maximum twelve month term on his convictions on counts five through eight, *see* O.R.C. 2929.14(A)(1), and to consecutive terms on counts two, three and eight -- for an aggregate

15

total term of five years incarceration. *See Exhibit 4 to Motion to Dismiss.* The parties agreed

that imposition of consecutive terms on counts two and three was required by Ohio law.

*Sentencing Transcript, Exhibit 20 to Motion to Dismiss*, at 493-94; O.R.C. 2929.14(E)(3).[1]

At sentencing, the trial court justified the sentence imposed as follows:

> All right, Mr. Bennett, as I mentioned, there's a presumption of
> prison on these three counts and the court, of course, has to
> sentence you to prison unless the factors weigh against that.
> In terms of recidivism factors – recidivism is a big word
> meaning how likely you are to commit another offense or not.
> You were on bail in Delaware Municipal Court at the time of
> these offenses. You have a long history of juvenile record,
> you've got a criminal damaging, abusing harmful intoxicants,
> cruelty to animals and arson, theft, criminal damaging, theft,
> menacing, another vandalism, resisting arrest, assault,
> disorderly. Adult record, drug abuse was dismissed,
> consuming under age, a number of cases dismissed. You have
> resisting and a criminal damaging in '02. You had a domestic
> violence, improper handling of a firearm in a vehicle, drug
> paraphernalia, possession of marijuana, criminal damaging,
> vehicle trespass, a number of suspension, driver's suspension
> charges. You failed to respond favorably in the past to
> sanctions imposed for criminal convictions; you have
> demonstrated a pattern of drug or alcohol abuse related
> offenses and refused to acknowledge that pattern, or refused

---

[1] O.R.C. 2929.14(E)(3) provides:

(3) If a prison term is imposed for a violation of division (B) of section 2911.01
of the Revised Code, a violation of division (A) of section 2913.02 of the
Revised Code in which the stolen property is a firearm or dangerous
ordnance, or a felony violation of division (B) of section 2921.331 of the
Revised Code, the offender shall serve that prison term consecutively to any
other prison term or mandatory prison term previously or subsequently
imposed upon the offender.

treatment, at least, apparently until apparently today.[2]

I don't find anything indicating recidivism is unlikely.  On the serious side, you were part of organized criminal activity.  On the less serious, I find no factors.  So the recidivism factors outweight those indicating less likely and the serious factors outweigh those indicating less serious.

Under 2929.13(B), of course, you were part of organized criminal activity and you were under probation at the time and you were in possession of a firearm.  The court would find that you're not amenable to community control and that the citizens of the county would be best served if you would serve a prison term.  I don't know whether you're showing remorse.  I guess I could say you don't show remorse because your counsel, of course, advised you not to say anything today.

The principles and purposes of sentencing, of course, is to punish you and to protect the public from future crime and the court finds that the sentence that I'm about to impose does that.

***

The Court would find that the sentences are ordered to be served consecutively under 2929.13(E)(4) because it is necessary to protect the public from future crime by you and it's necessary to punish you not disproportionate to the seriousness of your conduct and the danger you pose to the public.  You continued to commit B&E's after you were stopped by police; you broke into the same gun store twice,

---

[2] Defense counsel advised the trial court that petitioner had been using drugs during the time of the charges against him, but had "cleaned himself up" since that time and, although he previously had refused to comply with conditions of his probation, after he stopped using drugs, had started to comply with all of the conditions of his probation. *Sentencing Transcript*, at 492.

you were caught scoping out another gun store.  You were on probation when the offenses were committed; two or more offenses were part of one or more courses of conduct and the harm caused was so great or unusual that no single term would adequately reflect the seriousness and your criminal history requires consecutive sentences to protect the public from future crime.  Under 2929.14(C), you []posed the greatest likelihood of recidivism and the reason is you were arrested and you continued to break in gun stores and other business after you were arrested.

The Court would also find that the shortest prison term possible demeans the seriousness of your conduct and would not adequately protect the public from future crime by you or by others.

*Id.,* at 495-98.  The trial court's *Nunc Pro Tunc Judgment Entry of Sentence* indicates in relevant part as follows:

The Defendant has not previously served a prison term.

\*\*\*

The sentences as to Counts Two and Three shall be served consecutively to each other pursuant to R.C. 2913.02(B)(4). The sentence as to Count Eight shall be served consecutively to Counts Two and Three under R.C. 2929.14(E)(4). Consecutive sentences are necessary to fulfill the purposes of R.C. 2929.11, and not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public: the Defendant continued to commit breaking and entering offenses after he was stopped by the police.  The Defendant broke into the same gun store twice and was caught scoping out another gun store; and the Court FURTHER FINDS: the Defendant was on probation with Delaware Municipal Court when the offenses were committed; two or more offenses were a part of one or more courses of conduct and the harm caused

18

> was so great or unusual that no single term would adequately reflect the seriousness, AND; the Defendant's criminal history requires consecutive sentences: refer to the Pre-sentence Investigation report for priors.
>
>
> The Court finds pursuant to R.C. 2929.14(B) that the shortest prison term possible will demean the seriousness of the offense or will not adequately protect the public from future crime by the Defendant or others and therefore imposes a greater term.
>
> The Court finds that the Defendant poses the greatest likelihood of recidivism; the Defendant was arrested and continued to break in to gun stores and other businesses, AND THEREFORE imposes the maximum sentence for Counts Five, Six, Seven and Twelve.

*Exhibit 4 to Motion to Dismiss.*  As the foregoing makes clear, the trial court based its imposition of consecutive and maximum terms based on petitioner's prior record, on statements admitted by defendant regarding his drug use, on the statutory requirements under Ohio law for theft of firearms offenses, and on facts reflected in the jury's verdict. These considerations are permissible even under *Blakely.*

Claim one is therefore without merit.


## CLAIM FOUR

In claim four, petitioner asserts that his convictions are against the manifest weight of the evidence.  This claim is not appropriate for federal habeas corpus review.  The Due Process Clause does not provide relief for defendants whose convictions are against the

19

manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker,* 703 F.2d at 969.

However, under Ohio law, a claim that a verdict is against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his conviction was against the manifest weight of the evidence cannot be considered by this Court.

Liberally construing claim five to additionally raise a claim of insufficiency of the evidence, that claim is procedurally defaulted. Petitioner failed to raise this claim on direct

appeal.[3] Further, petitioner may now no longer raise these claims in the state courts under Ohio's doctrine of *res judicata. See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra.* The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default. Additionally, for the same reasons discussed *supra,* the procedural rule barring any claim of insufficiency of the evidence constitutes an adequate and independent state ground for denying relief. Further, petitioner has failed to establish cause and prejudice for his procedural default.

Thus, petitioner's claims based on the manifest weight of the evidence and sufficiency of the evidence are without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

---

[3] Respondent did not raise the affirmative defense of procedural default in regard to claim five, but construed the claim on its face to raise solely a claim that petitioner's convictions were against the manifest weight of the evidence. This Court has liberally construed claim five to additionally raise an issue of insufficiency of evidence. Therefore, the Court may *sua sponte* raise the issue of procedural default. *See Foti v. Bobby,* 2007 WL 1577785 (N.D.Ohio May 31, 2007), citing *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005); *Lorraine v. Coyle,* 291 F.3d 416, 426 (6th Cir. 2002). Petitioner may respond in any objections to the *Report and Recommendation*.

supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


May 13, 2008                                          *s/Norah McCann King*
                                          Norah McCann King
                                          United States Magistrate Judge



22